794 P.2d 118

**STATE of Arizona,
Respondent–Appellee,**

v.

**Bruce WAGSTAFF,
Petitioner–Appellant.**

**No. CR–88–0299–PR.**

Supreme Court of Arizona,
En Banc.

May 15, 1990.

As Amended on Grant of Motion for
Clarification July 16, 1990.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Former Asst. Atty. Gen. and Chief Counsel, Crim. Div., Jack Roberts, Asst. Atty. Gen., Phoenix, for respondent-appellee.

George M. Sterling, Jr., Phoenix, for petitioner-appellant.

GORDON, Chief Justice.

The State petitioned this Court to review a court of appeals decision affirming defendant's conviction, granting defendant's petition for post-conviction relief, and modifying the sentence. Pursuant to A.R.S. §§ 13–4031 and –4033 and Rule 31.19, Ariz. R.Crim.P., 17 A.R.S., we granted the State's petition but limited our review to whether the court of appeals correctly declared invalid the mandatory lifetime parole provision of A.R.S. § 13–604.01(I) thereby vacating the trial court's imposition of lifetime parole as part of defendant's sentence. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution.

For purposes of our review, we need only note that Wagstaff (appellant) was convicted of child molestation in the first degree, a crime falling within the special sentencing provisions for dangerous crimes against children, A.R.S. § 13–604.01. Appellant re-

ceived a mitigated sentence of 12 years and was further sentenced to lifetime parole as required by A.R.S. § 13–604.01(I), which provides:

> In addition to the term of imprisonment imposed pursuant to this section and notwithstanding any other law, the court shall order that a person convicted of any dangerous crime against children in the first degree be supervised on parole after release from confinement on such conditions as the court or board of pardons and paroles deems appropriate for the rest of the person's life.

The court of appeals found the statute "invalid" because: (1) it gives the judicial branch power to grant parole and that power rests exclusively with the Board of Pardons and Paroles; (2) it is inconsistent with other sections of the criminal code, specifically, A.R.S. §§ 31–412(A) and 31–414, which extend the Board of Pardons and Paroles' authority to supervise parolees only to the expiration of the term-of-years sentence; and (3) it is impossible to enforce the statute as it relates to a first-degree offender who is not eligible for parole during the entire sentence because no unexpired term for which a parole violator could be reincarcerated remains.

### DISCUSSION

■ Initially, we note that the court of appeals and both parties presented a broad array of problems with, justifications for, interpretations of, and rationale underlying this statute. Appellant challenged the statute's constitutionality on several grounds and the State provided many reasons why the statute should be upheld. We believe, however, that this statute violates the constitutionally required separation of powers on two bases not fully addressed by either party or by the court of appeals.

The Arizona Constitution provides for the division of government into three departments, stating that "such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3. By dispersing authority among various institutions of state government, the framers of the Arizona Constitution manifested their distrust of concentrations of power. *See* Leshy, *The Making of the Arizona Constitution,* 20 Ariz.St.L.J. 1, 70 (1988). The fear of concentrating power in the judicial branch was perhaps best expressed by one of the framers of the United States Constitution:

> [W]ere the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for *the judge* would then be *the legislator.* Were it joined with the executive power, *the judge* might behave in all the violence of *an oppressor.*

*The Federalist No. 47* (J. Madison, quoting Montesquieu) (emphasis in original). Many years ago, this Court quoted with favor the words of Chief Justice Marshall to describe the concept of division of power and the court's role in assessing whether the separation of powers doctrine has been violated:

> The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law; but the maker of the law may commit something to the discretion of the other departments, and the precise boundary of this power is a subject of delicate and difficult inquiry, into which a court will not enter unnecessarily.

*Giss v. Jordan,* 82 Ariz. 152, 158, 309 P.2d 779, 785 (1957) (quoting *Wayman v. Southard,* 10 Wheat. 1, 6 L.Ed. 253, 263 (1825)). As discussed below, we find that the statute in question crosses the definitionally difficult dividing line between constitutional and unconstitutional delegation of powers and, therefore, violates the mandate of Article 3 of the Arizona Constitution that the powers of government remain separate and distinct.

### *Judiciary's Power to Impose Lifetime Parole*

■ The court of appeals apparently believed that A.R.S. § 13–604.01(I) violated separation of powers. It said that the statute "purports to give the trial court power to impose lifetime parole.... However, the judicial branch of government in Ari-

zona has no authority to grant any person parole. The exclusive power to grant parole rests with the Arizona Board of Pardons and Paroles." *State v. Wagstaff,* 161 Ariz. 66, 775 P.2d 1130 (App.1988).

We agree that the exclusive power to grant parole rests with the Board of Pardons and Paroles. However, A.R.S. § 13–604.01(I) does not give the judicial branch power to grant parole; rather, it mandates that lifetime parole be imposed by the court as part of a convicted offender's sentence. The legislative determination that lifetime parole should be part of the sentence imposed by the judiciary on those who commit dangerous crimes against children does not necessarily violate separation of powers.

Arizona is not the first jurisdiction to create a special parole as part of the sentence. The "special parole term" provisions enacted by the United States Congress as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, for example, have been examined and upheld by nearly all of the federal circuit courts. *See, e.g., United States v. Arellanes,* 767 F.2d 1353, 1358–59 (9th Cir. 1985); *Yates v. United States,* 753 F.2d 70 (8th Cir.1985) (per curiam), *cert. denied,* 471 U.S. 1022, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985), *but see United States v. Tebha,* 578 F.Supp. 1398 (N.D.Cal.1984).

In the federal cases, defendants challenged the imposition of a special parole term on various constitutional grounds, including due process and separation of powers. The statute, 21 U.S.C. § 841(b)(1)(A), mandates a special parole term of at least three years in addition to a term of imprisonment.[1] Those attacking this statute charged that by failing to set the maximum number of years one could be sentenced to a special parole term, Congress created a vague statute and invalidly delegated legislative powers. *See, e.g., Arellanes,* 767 F.2d at 1358–59. The courts held that the sentencing statute was not vague or in violation of separation of powers because a maximum term of lifetime parole is implied and the penalty for parole violation is clearly defined. *See, e.g., Garcia v. United States,* 769 F.2d 697, 699 (11th Cir.1985).

Arizona's statute is quite clear on the number of years a person could be sentenced to a special parole. First-degree offenders must be sentenced to parole supervision for the remainder of their lives and second degree offenders can be sentenced to parole supervision up to the remainder of their lives. *See* A.R.S. § 13–604.01(I). Contrary to the court of appeals' implied interpretation, therefore, we do not believe the legislature's determination that those who commit dangerous crimes against children should be sentenced to lifetime parole, by itself, violates separation of powers. To the extent the court of appeals relied on this premise in invalidating the statute, we disapprove that reasoning.

### Unconstitutional Vesting of Executive Authority in the Judiciary

This Court, along with the courts of our sister states, has long recognized the division of power and the transfer of jurisdiction over a felon from the judicial to the executive branch of government upon conviction. *See Orme v. Roberts,* 32 Ariz. 502, 260 P. 199 (1927); *see, e.g., Swart v. State,* 720 P.2d 1265, 1270 (Okla.Crim.App.1986); *January v. Porter,* 75 Wash.2d 768, 453 P.2d 876, 879 (1969); *Commonwealth v. Cain,* 345 Pa. 581, 28 A.2d 897 (1942). In broad terms, the judiciary's function ends with a verdict of acquittal, the revocation of probation, or the final entry of a judgment and sentence. Upon entry of a final judgment and sentence of imprisonment, legal authority over the accused passes by operation of law to the Department of Corrections and the Board of Pardons and Paroles. *See generally Dupnik v. MacDougall,* 136 Ariz. 39, 664 P.2d 189 (1983)

---

1. 21 U.S.C. § 841(b)(1)(A) provides:
   Any sentence imposing a term of imprisonment ... shall, in the absence of ... a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment and shall, if there was ... a prior conviction, impose a special parole term of at least 6 years in addition to such term of imprisonment.

(discussing Department of Corrections authority); *see also State v. Harris*, 133 Ariz. 30, 648 P.2d 145 (App.1982) (discussing distribution of authority). These executive agencies bear full responsibility for executing the judgment and sentence as well as for determining the terms and conditions upon which parole may be granted. Their responsibilities are carried out pursuant to duly enacted statutes, including A.R.S. §§ 31–201.01 and –412, and guided by detailed administrative rules and regulations, codified at Ariz.Comp.R. & Regs. 5–1–201 *et seq.*

Under our system, parole decisions traditionally have not been part of the judicial process and have not been in the continuum of the judicial function of government. From the earliest days of Arizona's statehood, the Board of Pardons and Paroles, an arm of the executive branch, has exercised authority over parole decisions. *See* Penal Code of 1913. The statutes relating to parole do not envision a system under which a parolee is subject to the supervision of a court whose facilities for investigation and prisoner guidance are limited by necessity. Instead, the statutes envision active administration by trained officials who decide whether to grant parole and determine parole conditions based on current confidential investigative reports prepared by case analysts, Department of Correction offender records, and medical, psychological and psychiatric reports. *See* A.R.S. § 31–402. These investigations and recommendations sometimes are made many years after court officials have last seen the convicted person.

■ The court of appeals found the lifetime parole provision of A.R.S. § 13–604.01(I) inconsistent with other provisions of the criminal code, specifically A.R.S. §§ 31–402(A), –412(A), and· –414, which grant the Board of Pardons and Paroles exclusive authority over parole decisions and extend the authority to supervise a parolee only to the end of the term-of-years sentence. The State, in its brief to this court, proposes that we ignore the traditional distribution of authority. It suggests that the legislature implicitly divested the Board of Pardons and Paroles of its exclusive authority by including the phrase "and notwithstanding any other law" in A.R.S. § 13–604.01(I).

Given the long history of the distinct functions of the judicial and executive branches, as well as the judiciary's unsuitability for carrying out the tasks associated with a parole system, we are disinclined to read the phrase this broadly without more indication that divestiture was the legislature's intent. In addition, however, we believe the statute creates the potential for conflict between the executive and judicial branches and places the judiciary in a constitutionally impermissible position.

■ By its very words, the statute gives power to both the courts and the Board of Pardons and Paroles to dictate different parole conditions. The provision that the court shall order a first-degree offender supervised on parole "on such conditions as the court *or* the board of pardons and paroles deems appropriate for the rest of the person's life" creates an opportunity for the separate branches to contradict each other with regard to imposing parole conditions and determining if a parole condition has been violated. Such an inherent clash of authority cannot be sanctioned. *See* 16 Am.Jr.2d *Constitutional Law* § 314, at 835–36 (1979) ("judiciary may not encroach upon, share, or usurp the executive function" without violating separation of powers). Moreover, even if the potential for conflict was not inherent in the statute, the judicial branch cannot be placed in the position of encroaching on executive prerogative or of having to determine the constitutionality and pass objectively on a parole plan of its own design. *See, e.g., Rockwell v. Superior Court of Ventura County*, 18 Cal.3d 420, 435, 556 P.2d 1101, 1116, 134 Cal.Rptr. 650, 665 (1976) (judiciary cannot be placed in position of reviewing court-designed procedures and criteria for imposition of penalty). Such a scheme raises the specter of the concern underlying the separation of powers doctrine—concentrating the power to both impose and execute the sentence in the judicial branch

undermines the purpose of separating the powers of government.

■ On review to this Court, both parties discussed whether art. 4, pt. 1, § 1(6) of the Arizona Constitution prohibits legislative amendment of the statute granting exclusive authority over parole to the Board of Pardons and Paroles. We need not reach this constitutional issue, however, because we are persuaded that vesting the judiciary with the power to impose parole terms and conditions encroaches on the executive branch and consequently is unconstitutional. We note that a marked difference exists between the legislature mandating the court to impose lifetime parole as part of the sentence and the legislature allowing the court to participate in execution of the sentence by establishing parole terms and conditions. The former does not violate separation of powers because it is a legislative determination of the punishment to be imposed. The latter, however, is an unconstitutional delegation of executive authority in the judiciary.[2]

We hold that the provision ordering a person convicted of a dangerous crime against children supervised on parole "on such conditions as the *court* ... deems appropriate for the rest of the person's life" violates the constitutional requirement that the executive and judicial departments remain separate and distinct.

### Abdication of Legislative Responsibility to the Judiciary

■ Defining crimes and fixing penalties are legislative, not judicial, functions. *State v. Marquez,* 127 Ariz. 98, 103, 618

P.2d 592, 597 (1980). Trial counsel, appellate counsel, and the court of appeals all, in some form, identified the most problematic aspect of this statute: the legislature defined the crimes (commission of dangerous crimes against children) but only fixed part of the penalty. The statute describes the range of sentence (term of years plus lifetime parole) but not the sanction to be imposed for breach of the lifetime parole penalty.

■ When called upon to interpret a statute, our first inquiry is to determine and give effect to legislative intent behind the statute. *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). Clear and unambiguous statutory language is given its plain meaning unless impossible or absurd consequences would result. *Balestrieri v. Hartford Acc. & Indem. Ins. Co.,* 112 Ariz. 160, 163, 540 P.2d 126, 129 (1975). When a statute's language is unclear, we strive to give a sensible construction and, if possible, uphold the statute against challenges of unconstitutionality. *State v. A.J. Bayless Markets, Inc.,* 86 Ariz. 193, 197, 342 P.2d 1088, 1090 (1959). Our ability to interpret a statute's meaning or rectify statutory infirmities by construing the language to achieve a perceived legislative goal, however, is limited by the constitutionally decreed separation of powers that prohibits this Court from enacting legislation or redrafting defective statutes.

■ The legislature's purpose in enacting the Dangerous Crimes Against Children Act can be surmised. Protecting the children of Arizona and punishing severely

---

**2.** The dissent mischaracterizes the bases for our determination that this statutory scheme violates separation of powers. We do believe that the judiciary traditionally has not exercised power over parole and that the judicial branch is ill-suited to administer a parole program. In addition, however, we are concerned about the *inherent conflict created by the statute's* language stating that lifetime parole will be imposed under conditions determined by the court *or* the Board of Pardons and Paroles. Moreover, we believe the statute, as written, would allow the judiciary to encroach on the role of the executive and potentially requires the judiciary to determine the constitutionality of a court-imposed parole condition. The dissent

does not address any of these violations of separation of powers.

The dissent cites the federal "special parole term" scheme to support its position that a court-imposed special parole term is constitutional. The dissent fails to recognize, however, that Arizona's statute differs in important aspects from the federal statute. Unlike A.R.S. § 13–604.01(I), the federal parole statute does not create a situation where the federal courts share the parole function with the federal parole board. Moreover, unlike Arizona's statute, the federal statute fixes the penalty for parole violation (see discussion below, at 495, 794 P.2d at 128).

those who prey on them certainly are two legislative goals. In addition, as both the State and appellant propound, the legislature is attempting to address the problem of recidivism alleged to exist in this category of offender. The provisions of A.R.S. § 13–604.01(A–C) and (E), which impose lengthy terms of imprisonment and prohibit any type of release until the term of imprisonment is completed, address the first two purposes. The means chosen by the legislature to achieve the latter result, however, is far from clear.[3]

The State suggests that we can determine the sanction the legislature intended to impose by recognizing the judiciary's ability to exercise its contempt powers, by acknowledging the salutary effect of the parole provisions, or by reading A.R.S. § 13–604.01 in harmony with A.R.S. § 13–604.02. In this instance, however, the first two proposed "sanctions" are inapplicable and the third, which the State proposes should create harmony, actually results in cacophony.

We determined above that the judiciary cannot share the power over setting parole terms and conditions with the executive branch. The suggestion, therefore, that we could enforce lifetime parole through exercise of our contempt powers must fail. We cannot exercise our contempt powers pursuant to A.R.S. § 12–861 if we cannot issue the order setting out the conditions of parole. The State's other suggested interpretation, that we recognize the effect of warning a defendant that the State will be watching for the remainder of that person's life, may indeed have a salutary ef-

fect, but that effect does not rise to the level of a sanction for parole violation.

The State's additional suggestion that the court interpret the enhancement provisions of A.R.S. § 13–604.02 as the sanction the legislature intended to impose if lifetime parole is violated also must fail. The enhancement provisions of A.R.S. § 13–604.02, by their terms, enhance *subsequent* felony convictions but have no effect on the original conviction or sentence.[4] A.R.S. § 13–604.02 provides that a convicted person's release may be revoked for commission of a subsequent felony. As pointed out by the court of appeals, however, a person convicted of a dangerous crime against children in the first degree is ineligible for any type of release until the last day of the term of imprisonment imposed has been served. Consequently, no unexpired term remains to revoke. In addition, neither A.R.S. § 13–604.02 nor any other related statute provides a method to enforce a violation of a parole condition that does not rise to the level of a new felony.

Moreover, assuming the mandatory imposition of lifetime parole is part of the sentence and does not violate other constitutional provisions, the State's proposed interpretation would result in an internally inconsistent statute. We strive to construe a statute and its subsections as a consistent and harmonious whole. *Powers v. Isley*, 66 Ariz. 94, 100, 183 P.2d 880, 884 (1947). An attempt to harmonize subsections (E) and (I) of A.R.S. § 13–604.01 with the earlier enacted provisions of A.R.S.

---

3. The State also suggests that underlying this statute is the legislative determination that these types of offenders are "in dire need of help and should be strictly supervised the rest of their lives." Although laudable, we question whether this purpose is appropriately addressed by criminal penalties.

4. A.R.S. § 13–604.02 provides:
   A. Notwithstanding any provision of law to the contrary, a person convicted of any felony offense involving the [use of a weapon or inflicting physical injury] or [6 specific felonies] while the person is on ... parole ... shall be sentenced to life imprisonment and is not eligible for [any type of release] ... until the person has served not less than twenty-

five years. A sentence imposed pursuant to this subsection shall revoke the convicted person's release if the person was on release.... B. Notwithstanding any provision of law to the contrary, a person convicted of any felony offense not included in subsection A of this section if committed while the person is on ... parole ... shall be sentenced to a term of not less than the presumptive sentence authorized for the offense, and the person is not eligible for [any type of release] until the sentence imposed by the court has been served. A sentence imposed pursuant to this subsection shall revoke the convicted person's release if the person was on release....

**492**

§ 13–604.02 causes a circular and absurd result that could not have been within the scope of legislative intent. A.R.S. § 13–604.01(E) declares that "[a] person sentenced for a dangerous crime against children in the first degree ... is not eligible for ... parole ... until the sentence imposed by the court has been served." If lifetime parole under A.R.S. § 13–604.01(I) is part of the sentence, and the sanction for violation is revocation of release status pursuant to A.R.S. § 13–604.02, then no first-degree offender could ever be subject to release revocation because they would never complete service of the sentence in their lifetime.

We do not believe that any of the State's proposed interpretations aid in determining the penalty the legislature intended to impose for violation of a parole condition nor are we able to determine any rational penalty from our own review. In contrast to the federal special parole term scheme under the Comprehensive Drug Abuse Prevention and Control Act, for example, Arizona's sentencing provision does not specify sanctions for violation of a special parole term. Under the federal statute, Congress provided for an increase to the original term of imprisonment and revocation of a special parole term upon violation of a special parole condition.[5] Federal courts, therefore, are not forced to speculate about what Congress intended to occur upon violation of the special parole term.

Arizona's special parole statute also does not set out a range of punishment alternatives that would operate at the court's discretion. Compare *United States v. Batchelder*, 442 U.S. 114, 125–26, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) (two statutes providing different penalties for the same crime did not impermissibly delegate legislative responsibility for fixing penalties to executive branch because Congress fulfilled its duty by informing the court,

prosecutor and defendant of the permissible punishment alternatives) with *United States v. Evans*, 333 U.S. 483, 495, 68 S.Ct. 634, 640–41, 92 L.Ed. 823 (1948) (statute that clearly defined the crime was so vague as to intended punishment that the court would be encroaching on the legislative function by determining the punishment). Consequently, this Court is left the task of interpreting a vague penalty provision without any reasonable alternatives from which to choose.

■■■■ Uncertainty in a criminal statute results in an unconstitutionally vague statute, whether the uncertainty goes to the persons within the scope of the statute, the conduct forbidden, or the punishment which may be imposed. *See* W. LaFave and A. Scott, *Substantive Criminal Law* § 2.3 (1986). Indefiniteness in a criminal statute must be avoided because it may constitute a denial of due process of law when people of common intelligence must guess at its meaning or may differ as to its application. *Southwest Engineering Co. v. Ernst*, 79 Ariz. 403, 413, 291 P.2d 764, 770–71 (1955). Moreover, statutory language must be sufficiently definite so that those responsible for executing the law may do so in a rational and reasoned manner. *Cohen v. State*, 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978). As currently enacted, A.R.S. § 13–604.01(I) requires those subject to the penalty, those who must interpret its meaning, and those vested with the authority to enforce the provisions to guess at its meaning.

■■■■ Proscribing conduct and determining appropriate sanctions for those who deviate from the accepted norms of conduct is purely a legislative function. *State v. Marquez*, 127 Ariz. 98, 103, 618 P.2d 592, 597 (1980). By including a parole provision as part of the sentence but failing to state with sufficient clarity the consequences of violating a condition of the sentence, the

---

**5.** 21 U.S.C. § 841(c) provides:

(c) A special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of

imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. . . .

legislature left the task of discerning those consequences to the judiciary. The task of resolving ambiguity and filling gaps in this statute goes beyond the proper judicial task of construing statutes. As the United States Supreme Court commented upon finding a vague penalty provision an improper delegation of legislative authority, "there are limits beyond which we cannot go in finding what [the legislature] has not put into so many words or in making certain what it has left undefined or too vague for reasonable assurance of its meaning." *Evans*, 333 U.S. at 486, 68 S.Ct. at 636. We hold, therefore, that the portion of A.R.S. § 13–604.01(I) providing for mandatory imposition of lifetime parole without fixing a penalty for violation of that part of the sentence violates separation of powers.

### Severance

■ Before we declare a statute unconstitutional, we apply the rule of severance. An entire statute need not be declared unconstitutional if the constitutional portions can be separated. *Cohen v. State*, 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978). If A.R.S. § 13–604.01(I) only involved the constitutional infirmity of an improper delegation of executive authority to the judiciary, we would be able to sever the phrase giving the courts authority over parole decisions from the statute; the Board of Pardons and Paroles would remain to exercise parole discretion in accordance with the statute's intent. However, the language pertaining to the mandatory sentence of lifetime parole also creates constitutional problems. By imposing a parole term as part of the sentence without setting out

discernible sanctions for violation of a parole condition, the legislature abdicated its responsibility to the judiciary.

■ By separate opinion issued today, we also find the discretionary sentence of lifetime parole for second degree offenders without clear sanctions a violation of separation of powers.[6] *See State v. Berger*, 164 Ariz. 426, 793 P.2d 1093 (1990). Consequently, the lifetime parole provisions of A.R.S. § 13–604.01(I) are invalid as a violation of the separation of powers provision of Article 3 of the Arizona Constitution.[7]

The decision of the court of appeals is approved, as modified by this opinion. That portion of appellant's sentence imposing lifetime parole is vacated.

FELDMAN, V.C.J., and LACAGNINA, J., concur.

CORCORAN, J., recused himself and did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, Lacagnina, J., of the Court of Appeals, Division Two, was designated to sit in his stead.

CAMERON, Justice, dissenting.

I regret that I must dissent. I believe that even though parole has traditionally been an executive function, no constitutional doctrine prohibits the courts from exercising this responsibility. Indeed, parole, being quasi-judicial in nature, could be as much of a judicial function as probation is today. I find nothing in our constitution to prevent the legislature from conferring this responsibility upon the judiciary.

---

6. The discretionary sentence of lifetime probation for second degree offenders is not before the Court at this time. The statutory language suggests that the probation provisions are not so intertwined with the parole provisions as to raise the presumption that the legislature would not have enacted one without the other. *See State ex rel. Berger v. Superior Court*, 106 Ariz. 365, 370, 476 P.2d 666, 671 (1970). We purposefully do not pass on the constitutionality of the probation provision, however, because the issue is not before us. *Id.* at 366, 476 P.2d at 667.

7. Mindful of the legislature's authority to declare punishment for crimes, we point out that

there are ways the statute could have been constructed to avoid the separation of powers conflict. For example, the legislature could have declared a life imprisonment penalty for these types of offenses with parole eligibility after a certain number of years. Another possible model might be a special parole provision similar to the federal Comprehensive Drug Abuse Prevention and Control Act of 1970 as described above. We are not determining that these types of provisions necessarily would be constitutional; they would, however, not conflict with the separation of powers doctrine.

### 1. Does the Judiciary Have Statutory Authority to Grant Parole?

Statutes are presumed constitutional and the burden of proof is on the opponent of the statute to show it infringes upon a constitutional guarantee or violates a constitutional principle. *Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977); *New Times, Inc. v. Arizona Bd. of Regents*, 110 Ariz. 367, 370, 519 P.2d 169, 172 (1974). Courts should strive to uphold legislation whenever possible, but should not legislate a particular result by judicial construction. *Cohen v. State*, 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978). This court will not render a statute unconstitutional unless we are satisfied beyond a reasonable doubt that the legislation is in conflict with the federal or state constitutions. *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982).

The Arizona Constitution is silent as to the power of courts to impose parole. In fact, our constitution does not address parole at all, nor does it prohibit the legislature from conferring upon the courts the power to place a defendant on parole.

The majority concludes, however, that the statute violates the separation of powers provision of the Arizona Constitution which reads:

> The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Ariz. Const. art 3. The majority's reasons are twofold: 1) parole decisions have traditionally been a function of the executive branch, not the judiciary; and 2) the judiciary is unsuitable for parole related tasks.

By statute, the power to recommend parole is vested exclusively in the Board of Pardons and Paroles (Board), an executive branch agency:

> The board of pardons and paroles shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons.

A.R.S. § 31–402(A). In addition, it is within the Board's sole discretion to determine whether or not to release a prisoner who is parole eligible. A.R.S. § 31–412(A); *Stewart v. Arizona Bd. of Pardons and Paroles*, 156 Ariz. 538, 540, 753 P.2d 1194, 1196 (App.1988) ("The legislature intended to give the Board 'sole discretion' to determine whether to grant or deny parole."). Thus, the Board's exclusive domain includes both the initial imposition of parole eligibility and the actual release of a prisoner onto parole.

I believe, however, that it is within the legislative domain to assign the power to impose parole. *State v. Molina*, 118 Ariz. 250, 251, 575 P.2d 1276, 1277 (App.1978). Under A.R.S. § 13–703(A), the legislature has granted the courts the power to sentence a defendant to a term of years without possibility of parole, mandating a twenty-five year minimum sentence for a defendant convicted of first-degree murder when life imprisonment or death is imposed. A.R.S. § 13–703(A); *see also State v. Williams*, 115 Ariz. 288, 289, 564 P.2d 1255, 1256 (App.1977) (mandatory minimum prison sentences are valid and "an inherent part of [the legislature's] power to prescribe punishment for the acts which it has prohibited as criminal"). There is little doubt that the legislature can require that the judiciary impose a mandatory prison term without the possibility of parole for 25 years. I believe that the legislature also may require the judiciary to impose lifetime parole as part of the original sentence. I see no reason why the legislature should be prohibited from requiring the courts to impose lifetime parole, when it can require the courts to sentence a defendant without possibility of parole.

The majority agrees that A.R.S. § 13–604.01(I) mandates courts to impose lifetime parole as part of the defendant's sentence, and does not give the judiciary power to grant parole. The majority says that although this does not render the statute unconstitutional, it violates separation of powers because the judiciary is unsuitable for parole tasks and traditionally has

not exercised parole functions. I disagree. The legislature may determine the penalties for crimes, and has done so here by mandating courts to impose parole as part of the sentence.

Support for this position may be found in federal law under the Federal Drug Abuse Prevention and Control Act (Act) which provides for a "special parole term" to be imposed after a defendant has served his entire initial sentence. 21 U.S.C. § 841(c). The Act authorizes the district judge to impose a "special parole term" in addition to defendant's ordinary parole. Although a split of authority exists, the majority of federal courts considering the constitutionality of a judicially imposed "special parole term" have found no separation of powers impediment to such a provision. *United States v. Arellanes,* 767 F.2d 1353 (9th Cir.1985) (special parole term offends no constitutional guarantee); *Yates v. United States,* 753 F.2d 70, 71 (8th Cir.1985) (per curiam), *cert. denied,* 471 U.S. 1022, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985); *United States v. Hernandez,* 750 F.2d 1256, 1260 (5th Cir.1985); *United States v. Walden,* 578 F.2d 966, 972 (3rd Cir.1978); *United States v. Jones,* 540 F.2d 465, 468–69 (10th Cir.1976) (special parole provisions of federal narcotics statute are not unconstitutionally vague, nor invalid delegation of legislative power to the judiciary), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977). These courts uphold "special parole" on the theory that it is a statutory exception to so-called ordinary parole. *But cf. United States v. Tebha,* 578 F.Supp. 1398 (N.D.Cal.1984) (special parole term violates due process because it fails to give the parolee notice of the sanction imposed for parole violations and it violates the principle of separation of powers because a judge is given unrestricted power to determine the sanction for a parole violation).

I agree with the federal majority view on the constitutionality of a court imposed special parole term and believe that the lifetime parole provision of A.R.S. § 13–604.01(I) offends no United States or Arizona constitutional provision.

### 2. *Is There Power to Punish?*

The majority concludes that A.R.S. § 13–604.01(I) is unconstitutionally vague because it contains no specified penalty for violation of lifetime parole. Because a first-degree offender must serve his entire prison sentence before he may be paroled, there presumably is no way to punish him as there will be no unexpired portion of the sentence to use for reimprisonment for parole violations. *Wagstaff,* 161 Ariz. 66 at 70, 775 P.2d 1130 at 1134 (App.1988). I disagree. I believe that the enhancement statute, A.R.S. § 13–604.02 clearly sets out the punishment for defendants on parole, whether it be ordinary or lifetime parole. This statute provides enhancement for subsequent sentences, mandating harsher punishment for defendants who commit felonies while released on probation, parole, work furlough or any other release or escape from confinement for conviction of a felony offense. The intent of the legislature, therefore, was to require enhanced punishment for defendants who commit felonies while on parole. Because I believe defendants convicted of dangerous crimes against children in the first degree can be placed on lifetime parole, it follows that the enhancement statute applies to them. Admittedly, the statute does not enhance the original sentence if that sentence has been served. However, the statute states that the punishment mandated shall be "consecutive" to any other sentence from which a convict was released. In other words, if the original sentence has been served, a repeat offender will receive a sentence separate and distinct from his original sentence. The enhancement statute would not apply to a non-criminal violation of a condition of defendant's parole, although, as the state suggests, a defendant might be held in contempt of court for such violations. This question need not be decided at this time because I believe that most violations will be criminal in nature and subject to enhancement as noted above.

### 3. *Does the Statute Conflict with Other Statutes?*

I also believe the legislature intended to make an exception to the parole board's

authority by enacting A.R.S. § 13–604.01(I). Admittedly, A.R.S. § 13–604.01(I) conflicts with the previously enacted A.R.S. § 31–402(A), which gives the Board of Pardons and Paroles "exclusive power to pass upon and recommend ... paroles and pardons." However, it appears that the legislature intended to make an exception to the parole board's exclusive authority. This intent is manifested in the reservation "notwithstanding any other law." A.R.S. § 13–604.01(I).

As a rule of construction, statutes relating to the same subject matter, or the same general purpose, should be construed together and harmonized where possible. *State v. Sweet,* 143 Ariz. 266, 270–71, 693 P.2d 921, 925–26 (1985); 2A Sutherland, Statutory Construction § 51.02, at 453 (4th Ed 1984). In accord with this principle is the presumption against the implied repeal of one statute by another. *State v. Rice,* 110 Ariz. 210, 213, 516 P.2d 1222, 1225 (1973); *State ex rel. Purcell v. Superior Court,* 107 Ariz. 224, 227, 485 P.2d 549, 552 (1971).

If, however, two statutes are so in conflict that they cannot stand together or be harmonized, different rules of statutory construction apply. In that situation, the more recent statute controls over the older statute. As noted by Sutherland:

> Statutes for the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible. If there is an irreconcilable conflict between the new provision and the prior statutes, the new provision will control as it is the later expression of the legislature.

Sutherland, *supra,* § 51.02, at 453–54. *See Lemons v. Superior Court,* 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984); *Pima County v. Heinfeld,* 134 Ariz. 133, 654 P.2d 281 (1982) (most recent statutory provision held to control over conflicting older provision). I believe A.R.S. § 13–604.01(I) prevails over the previous conflicting statute.

I would hold that the lifetime parole provision of A.R.S. § 13–604.01(I) does not violate the constitutional principle of separation of powers. Courts have the statutory authority to impose lifetime parole on pris-

oners because the legislature stated in A.R.S. § 13–604.01(I) that court imposed parole is an exception to any other law ("notwithstanding any other law"), and this would include the previously enacted statute A.R.S. § 31–402(A) (exclusive authority over parole shall be vested in the board of pardons and paroles). The sentence of the trial court should be affirmed and the opinion and decision of the court of appeals vacated.

MOELLER, J., concurs.